UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEFFREY BRIGHT, on behalf of
himself and all others similarly situated,

        Plaintiff,

v.

ASSET ACCEPTANCE, LLC,

        Defendant.

Civil Action No. 1:11-cv-05846

Judge Jerome B. Simandle
Mag. Judge Joel Schneider

## DEFENDANT'S BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INDEX OF AUTHORITIES .................................................................. iii

STATEMENT OF ISSUES PRESENTED ............................................... vi

CONTROLLING AND MOST APPROPRIATE AUTHORITY ........................ vii

INTRODUCTION ............................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

   A. Caller Identification Services ..................................................... 2

      1. The Calling Party Is Required To Associate Its True Name With
         Its Number And Phone Service Provider Of The Called Party
         Is Required To Disclose That Name ......................................... 3

   B. Asset Acceptance, LLC and Omega Services, LLC ........................ 4

   C. The History Of The Number Asset Used To Call Plaintiff ............... 5

      1. Asset Did Not Use A New Jersey Telephone Number To Call
         New Jersey Consumers ........................................................ 5

      2. "Warranty Services" Was The Name Associated With The
         7962 Number Before Asset Acquired The Right To Use The
         7962 Number ..................................................................... 5

      3. Asset Instructed Omega To Associate Only Asset's Name With
         The 7962 Number And Omega Associated Asset's Name With
         The 7962 Number In The Proper Database .............................. 6

   D. Asset's Interaction With Plaintiff ............................................... 8

      1. Asset Acquires Plaintiff's Sprint Account In 2005 ................... 8

      2. Plaintiff Has Evidence Of Only One Call In Which Comcast
         Disclosed "Warranty Services" And That Call Resulted In
         Asset Disclosing Its Correct Name ........................................ 8

   E. Plaintiff's Complaint ............................................................. 10

ARGUMENT ................................................................................. 11

i

I. THE STANDARD FOR CLASS CERTIFICATION ....................................... 12

II. PLAINTIFF FAILS TO CARRY HIS BURDEN TO JUSTIFY
CLASS CERTIFICATION.................................................................................. 14

   A. Plaintiff's Proposed Class Does Not Satisfy The Threshold
   Ascertainability Test .................................................................................. 14

   B. Ascertainability Problems Exist Regardless Of How The Class
   Is Defined.................................................................................................... 16

   C. Plaintiff Does Not Satisfy The Elements Of Rule 23(a).............................. 21

      1. Plaintiff Cannot Satisfy The Numerosity Requirement.......................... 21

      2. Plaintiff's Claims Are Not Sufficiently Common Or Typical
      Warrant Class Certification.................................................................... 23

   D. Plaintiff Does Not Satisfy The Predominance Requirement Of
   Rule 23(b) .................................................................................................. 26

CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Honda Motor Co., Inc. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) .............................................................. 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 26

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) ........................................................... 16

*Comcast Corp. v. Behrend*,
  -- U.S. --, 2013 WL 1222646 (Mar. 27, 2013) ................................. 13, 27, 28, 29

*Coopers v. Lively*,
  437 U.S. 463............................................................................................ 12

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)............................................................................ 17, 18

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)............................................................... 16

*Donohue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ........................................................... 26

*Dudo v. Schaffer*,
  82 F.R.D. 695 (E.D. Pa. 1979)........................................................... 22

*General Telephone Co. of the Northwest, Inc. v. Equal Employment
  Opportunity Comm.*,
  446 U.S. 318 (1980)............................................................................ 21

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)............................................................................ 21

*Glover v. Client Services, Inc.*,
  2007 WL 2902209 (E.D. Mich. Oct. 2, 2007)................................... 25

iii

*Hahn v. Triumph Partnerships LLC*,
    557 F.3d 755 (7th Cir. 2009) ............................................................................. 25

*Harper v. Trans Union, LLC*,
    2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)...................................................... 30

*Hayes v. Wal-Mart*,
    281 F.R.D. 203 (D.N.J. 2012)................................................................. 14, 15, 16

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011)................................................................................. 26

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)............................................................. 14, 17, 27, 28

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)................................................................................. 16

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)............................................................................................. 17

*Leeseberg v. Converted Organics Inc.*,
    2010 WL 4878380 (D. Del. Nov. 22, 2010) ...................................................... 30

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)..................................... 12, 15, 17, 21, 23, 24, 26, 28

*Miller v. Javitch, Block & Rathbone*,
    561 F.3d 588 (6th Cir. 2009) .............................................................................. 26

*Pawelczak v. Fin. Recovery Services, Inc.*,
    286 F.R.D. 381 (N.D. Ill. 2012)................................................................... 27, 28

*Porter v. Nationscredit Consumer Disc. Co.*,
    229 F.R.D. 497 (E.D. Pa. 2005).......................................................................... 29

*Szczubelek v. Cendant Mortgage Corp.*,
    215 F.R.D. 107 (D. N.J. 2003)............................................................................ 21

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)......................................................................... 21, 22

iv

*U.S. v. Davis*,
   397 F. 3d 173 (3d Cir. 2008).................................................................. 17

*Wahl v. Midland Credit Mgmt., Inc.*,
   556 F. 3d 643 (7th Cir. 2009) ............................................................ 25

*Wal-Mart v. Dukes*,
   131 S. Ct. 2541 (2011)............................................. 12, 13, 14, 17, 21, 23, 24, 26

**RULES**

Fed. R. Civ. P. 23(a)................................................. 12, 13, 14, 17, 21, 22, 26, 27, 30

**STATUTES**

15 U.S.C. § 1692d(6) ......................................................................... 25, 28

15 U.S.C. § 1692e(10)......................................................................... 10, 11

15 U.S.C. § 1692e(14).......................................................................... 10, 11

Fair Debt Collection Practices Act................................................. 1, 2, 3, 10, 25, 27

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should this Court deny class certification where: (a) the proposed class is not ascertainable; (b) the proposed class does not meet Fed. R. Civ. P. 23(a)'s numerosity requirement; and (c) the legal and factual issues upon which Plaintiff's claims are individual inquiries that frustrate Fed. R. Civ. P. 23(a)'s commonality and typicality requirements and Rule 23(b)'s predominance requirement?

| | |
|---|---|
| Plaintiff would answer: | No. |
| Defendant answers: | Yes. |
| This Court should answer: | Yes. |

# CONTROLLING AND MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23

*Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011)

*Comcast Corp. v. Behrend,* -- U.S. --, 2013 WL 1222646 (Mar. 27, 2013)

## INTRODUCTION

Plaintiff seeks class certification of Fair Debt Collection Practices Act ("FDCPA") claims concerning the name displayed on caller identification ("Caller ID") devices when Defendant Asset Acceptance, LLC ("Asset") made collection calls using a particular telephone number ending in 7962 (the "7962 Number"). Importantly, Plaintiff does not claim that when Asset spoke with consumers it failed to disclose its correct name. That much he admits.

Instead, Plaintiff claims that his Caller ID device displayed the name "Warranty Services" when Asset called on June 13, 2011. From that, he attempts to certify a class consisting of every New Jersey consumer that Asset called using the 7962 Number without regard to whether each proposed class member even had a Caller ID device or whether that device ever displayed "Warranty Services" when Asset called. Undoubtedly, Plaintiff's redefined, over-inclusive class definition stems from his inability, despite fifteen (15) months of discovery, to uncover more than one New Jersey consumer whose Caller ID displayed "Warranty Services" when Asset called. This Court should reject Plaintiff's attempt to solve his inability to show numerosity – via his original class – by proposing an over-inclusive new class.

Even assuming Plaintiff could meet his burden of proving an ascertainable class, he cannot demonstrate typicality or commonality. As even Plaintiff must

1

concede, it is a person's phone service provider that is responsible for accessing current information from a database and "Warranty Services" may have been displayed on Plaintiff's Caller ID device because his phone service provider did not access current information from the database in which Asset's number was associated. The fact is that there are a multitude of variables and individualized inquiries that would be necessary to determine class membership and liability, including whether the class member had Caller ID services when Asset called, the identity of the called party's phone service provider, the actions taken by that provider (did it access the right database during the transmission of the call or rely on third party information that may have been outdated), what appeared on the called party's Caller ID device, and whether Asset disclosed its name to the called person either in a live conversation or recorded message during that same call. Consequently, class certification is inappropriate and Plaintiff's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Caller Identification Services

Plaintiff supports his understanding of Caller ID technology with the Affidavit of Jay Shell, a former Asset employee and lead plaintiff in a recently filed class action over the acquisition of Asset. (DE 41, Ex. A). As set forth in the argument section, *infra*, Mr. Shell's Affidavit lays no foundation for his ability to

discuss caller identification issues, and relies on "facts" that are unsubstantiated and contradicted in the record.

For purposes of Caller ID, companies are allowed to register a name of up to 15 characters to be associated with their telephone numbers. This name is commonly referred to as a "CNAM." (Declaration of Christopher Gillen ¶ 5, Ex. 1 to Easley Decl.). Local Exchange Carriers register CNAMs for their subscribers in the database of the Signaling System Seven Provider ("SS7 Provider"), which they contract to use. *Id.* ¶¶ 6-7. There is no "national database" of CNAMs, as Mr. Shell suggests. *Compare id.* ¶ 6, *with* Shell Aff. ¶ 8.

              1.    <u>The Calling Party Is Required To Associate Its True Name With Its Number And Phone Service Provider Of The Called Party Is Required To Disclose That Name.</u>

Caller ID services provide additional information by associating the number called from with a caller name. (Gillen Decl. ¶ 5). When the calling party (e.g., Asset) places a call to a consumer with Caller ID services, the LEC/phone provider for the called party (e.g., Comcast for Plaintiff) is supposed to make an inquiry to the SS7 Provider to learn the CNAM associated with the number used to make the call. The SS7 Provider either searches its own CNAM database to disclose the correct CNAM (in the event the LEC owning the number is one of its clients) or makes a similar inquiry to find the correct name in the appropriate database of another SS7 Provider and passes that response through to its client. *Id.* ¶ 7. The

3

phone service provider for the called party is charged a fee for each such inquiry– sometimes referred to as a "dip" – with the SS7 provider ("Database Inquiry Fee"). *Id.* ¶ 8.

When the correct designated name for the calling party is not disclosed by the phone service provider for the called party, it can be the result of the phone service provider for the called party: (a) being unable to access the link to the SS7 Provider; or (b) choosing not to make an inquiry with the SS7 Provider. *Id.* ¶ 9. It is also possible that the called party's Caller ID device was not working properly.

### B.    Asset Acceptance, LLC and Omega Services, LLC

Asset purchases charged-off accounts from credit originators and other sellers. (Declaration of Kenneth Proctor ¶ 2, Ex. 2 to Easley Decl.). Asset's telephone calls to the persons responsible for paying their debts can result in at least four events. *Id.* ¶ 6. Asset may speak to the person responsible for the account, leave a message on a recording device, not leave a message, or speak with a third person. *Id.*

Omega Services, LLC ("Omega") provides caller ID display services to its clients, including Asset. (Gillen Decl. ¶ 10). Omega's relationship with Asset is governed by a February 14, 2006, Master Service Agreement ("MSA") under which Omega agreed to provide Asset with caller ID display and management

services for Asset's use in Asset's customer contact centers. *Id.*[1]  In providing those services, Omega assigns telephone numbers to Asset for use at Asset's calling centers and registers those numbers and the CNAM Asset wants associated with those numbers in the CNAM database of the SS7 Provider, which the owner of the number has contracted to use. *Id.* ¶ 11.  Omega registers the CNAMs of its client in two separate databases operated by the different SS7 Providers. *Id.* ¶ 6.

### C.    The History Of The Number Asset Used To Call Plaintiff

####    1.    Asset Did Not Use A New Jersey Telephone Number To Call New Jersey Consumers.

The complete telephone number at issue is 443.550.7962. *Id.* ¶ 12.  The 443 area code is located primarily in the State of Maryland. *Id.*  Thus, contrary to Mr. Shell's Affidavit, this case has nothing to do with Asset using a number within the same area code as the Plaintiff or class members, who all reside in New Jersey. (DE 41, Ex. A ¶ 6).

####    2.    "Warranty Services" Was The Name Associated With The 7962 Number Before Asset Acquired The Right To Use The 7962 Number.

Omega acquired the right to assign the 7962 Number to its customers from Nationsline. (Gillen Decl. ¶ 12).  Nationsline was the LEC that owned the 7962 number. *Id.*

---

[1] Plaintiff attached a copy of the MSA (redacted to conceal confidential pricing information) as Exhibit C to the Declaration of Sergei Lemberg, which Plaintiff submitted in support of his motion for class certification. (DE 41).

Omega first assigned the 7962 Number to a company called IGPEN, Inc., on March 11, 2008. *Id.* ¶ 13. On March 12, 2008, Omega accessed the calling name database maintained by Southern New England Telephone company ("SNET") and updated SNET's database to associate the name "Warranty Services" with the 7962 number for caller identification purposes. *Id.* IGPEN stopped using the 7962 number on or about September 3, 2008. *Id.*

### 3. Asset Instructed Omega To Associate Only Asset's Name With The 7962 Number And Omega Associated Asset's Name With The 7962 Number In The Proper Database.

Ten months later, on or about July 20, 2009, and pursuant to the MSA, Omega provided Asset with the exclusive use of the 7962 Number. *Id.* ¶ 14. Asset requested Omega to associate the 7962 Number with the caller identification name of "AACC," which is the abbreviation for Asset Acceptance Capital Corp., Asset's parent company.[2] *Id.* Concurrent with providing the 7962 Number to Asset, Omega accessed SNET and updated SNET's database to associate the word "AACC" with the 7962 Number for caller ID purposes. *Id.*

---

[2] Plaintiff alleges that the deposition testimony of Todd Langusch, Asset's Chief Information Officer, supports that Asset contracted with Omega to alter Caller ID information, "[t]o increase the probability of a debtor answering the phone." (Plaintiff's Brief, DE 41 at 2). Mr. Langusch did not testify that Asset used Omega to alter the name appearing on the caller identification devise.

Rather, Langusch testified that when Omega provides a telephone number for Asset's use, Asset "tell[s] them to associate Asset Acceptance with that number or the appropriate entity." (Langusch Dep. Tr. at 22-23, Ex. 3 to the Declaration of Aaron Easley). Langusch further testified that Asset never asked Omega to display "Warranty Services," on a number that Asset used and that "Asset's never tried to hide the name." *Id.* at 60.

On July 9, 2010, Asset accessed Omega's Caller ID management tool through the Internet and instructed that the name associated with the 7962 Number be changed from "AACC" to "ASSETACCEPTANCE." *Id.* ¶ 15. This is the only way in which Asset could have changed the name associated with the 7962 Number. *Id.* ¶ 16. Omega processed Asset's request the same day by registering the new name in SNET's CNAM database. *Id.* ¶ 15. *See also* Declaration of Donna Kingdon ¶ 4, Ex. 4 to Easley Declaration. Asset never instructed Omega to associate the CNAM "Warranty Services" with the 7962 Number. Asset instructed Omega to associate only the names "AACC" and "AssetAcceptance" with that number. (Gillen Decl. ¶¶ 14-16).

Since July 9, 2010, for every telephone call Asset placed from the 7962 Number in which the phone provider for the called party accessed the SNET database for Caller ID information associated with such call, the word "ASSETACCEPTANCE" would have been transmitted to that phone provider and, consequently, to the called party's Caller ID device. *Id.* ¶ 17. In other words, if anything other than "ASSETACCEPTANCE" appeared on any called party's Caller ID device during any such call, the phone provider for the called party: (a) was unable to access the link to the SS7 Provider; (b) chose not to make an inquiry with the SS7 Provider; or the called party's Caller ID device did not work properly *Id.* ¶¶ 9, 17.

7

On occasion since July 9, 2010, Asset has sought confirmation from Omega of the fact that the name associated with the 7962 Number was/remained "ASSETACCEPTANCE," and that, on those occasions, Omega confirmed that fact. *Id.* ¶ 19.

**D.    Asset's Interaction with Plaintiff**

      1.    <u>Asset Acquires Plaintiff's Sprint Account In 2005</u>.

Asset owns an account for which Plaintiff is responsible, account number 22516 (the "Account"). (Proctor Decl. ¶ 5).  Plaintiff opened the Account with Sprint in 2001 and does not dispute that Account and associated debt is his.  *Id.*; Plaintiff's Brief, DE 41 at 2.  Asset acquired the Account in 2005. (Proctor Decl. ¶ 5; DE 41 at 2).

      2.    <u>Plaintiff Has Evidence Of Only One Call In Which Comcast Disclosed "Warranty Services" And That Call Resulted In Asset Disclosing Its Correct Name</u>.

Attached as Exhibit F to the Declaration of Sergei Lemberg are the Asset collection notes ("Notes") of the Account printed from Asset's COGENT account system.  The Notes are Asset's business records of the action it took on the Account, including its interactions with Plaintiff. (Proctor Decl. ¶ 7).

Plaintiff's landline telephone number in 2011 was 856.537.7151 ("7151 Number").  *Id.* ¶ 8.  The 856 area code belongs to the State of New Jersey.  Asset received the 7151 Number on January 28, 2011.  *Id.*  Asset's receipt of the 7151

Number appears in the Notes on January 28, 2011. *Id.*; *see also* Exhibit F to the Declaration of Sergei Lemberg at AACC-000021.

Asset made its initial call to the 7151 Number on February 25, 2011 (the "2/25/11 Outbound Call"). (Proctor Decl. ¶ 9). The 2/25/11 Outbound Call appears in the Notes on February 25, 2011, at 12:33 PM. *See* Exhibit F to the Declaration of Sergei Lemberg at AACC-000021. Asset's telephone records of that call confirm that the call lasted approximately 42 seconds and resulted in the following prerecorded message being left on Plaintiff's recording device that disclosed the name "Asset Acceptance" and Asset's toll-free telephone number:

> This message is for **<<name>>**. By continuing to listen you are acknowledging that you are **<<name>>**. If you are not **<<name>>** please hang up. If you are, please continue to listen, but not in the presence of others as it contains personal information. This is **<<alias>>** a debt collector with Asset Acceptance, please contact me about a personal business matter at **<<toll free>>**. *This is an attempt to collect a debt, and any information obtained will be used for that purpose.* Thank you.

(Proctor Decl. ¶¶ 9-10). Plaintiff returned the message Asset left for him on February 25, 2013. *Id.* ¶ 12. Plaintiff further admits that Asset disclosed its name in every conversation it had with him. (Bright Dep. Tr. at 113-14, Ex. 5 to Easley Decl.)

Plaintiff claims Comcast disclosed "Warranty Services" on his caller identification device when Asset called the 7151 Number on June 13, 2011 (the

"6/13/11 Outbound Call"). (DE 41 at 3). He claims Asset deceived him by misrepresenting its name when calling. (Bright Dep. Tr. at 67). In other words, Plaintiff claims that had Comcast disclosed Asset's name he would not have answered those calls. But when asked at his deposition whether he would have answered the phone had the Caller ID displayed the name "Asset Acceptance," Plaintiff admitted he would have answered the call. *Id.* at 77. Moreover, Plaintiff did not answer the 6/13/11 call. (Proctor Decl. ¶ 15). Rather, Asset left a message for Plaintiff in which it disclosed the call was from "Asset Acceptance." *Id.*

### E.   Plaintiff's Complaint

Plaintiff did not complain in writing to Asset, any Attorney General, or the Better Business Bureau about Asset's alleged Caller ID issue. (Bright Dep. Tr. at 147-48). Rather, he immediately sought an attorney and filed this lawsuit in October 2011, alleging violation of the FDCPA, specifically 15 U.S.C. §§ 1692d(6), e(10), and e(14). (DE 1). Plaintiff seeks actual damages for himself and the members of the class. (DE 7 at 12).

Until this Motion, Plaintiff's proposed class always consisted of consumers with Caller ID services. For example, Plaintiff defined the proposed class in his Amended Complaint as:

> All consumers in the state of New Jersey to whom Asset
> Acceptance made calls from telephone number (443)
> 550-7962 representing itself as "Warranty Service" for
> the purpose of collecting a debt incurred for personal,

10

> family, or household purposes, during the one year
> period prior to the filing of the complaint in this action
> until judgment in this case.

(DE 7 at 5).  Plaintiff had approximately 15 months (through January 2013) to take

discovery on the size of the class.  Notwithstanding extensive discovery of Asset,

advertising by Plaintiff's law firm, and a subpoena to the Better Business Bureau,

only one class member[3] was located.  *See* DE 41 at 4.  *See also* Lemberg Firm

Advertisement, Ex. 6 to Easley Decl.

Faced with the reality of having only class member under the definition of

the class in the Amended Complaint, Plaintiff's Brief proposed an entirely new

class definition, wholly unrelated to the Caller ID issues in this case.  The new

definition excludes any mention of Caller ID and Warranty Services and includes

all residents of New Jersey regardless of (1) whether they have Caller ID or (2)

what company name appeared on their Caller ID:

> All New Jersey consumers who, between October 7,
> 2010 and August 23, 2011, Asset Acceptance, LLC
> called using the telephone number 443-550-7962.

(DE 41 at 5).

---

[3] Deshan Reeves was found through a computer search of Asset's account records
for those debtors with a New Jersey addresses who had complained about
"Warranty Services" appearing on their Caller ID.  *See* Asset's Supplemental
Interrogatory Responses, Ex. B to Lemberg Decl., as attached to Plaintiff's Brief.
The other persons mentioned in Plaintiff's Brief do not reside in New Jersey.

## ARGUMENT

## I.   THE STANDARD FOR CLASS CERTIFICATION

A "class action is an exception to the usual rule" that litigation should be conducted "by and on behalf of the individual named parties only." *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2550 (2011). "[T]o justify a departure from that rule," the class representative must "possess the same interest and suffer the same injury as the class members." *Id.* Classes should only be certified cautiously, as they can exert undue pressure to settle even meritless claims, and the inability or failure of the proponent of class certification to fully meet his or her burden compels denial of the request for certification. *See, e.g., Coopers v. Lively*, 437 U.S. 463, 470-72.

As the proponent of class certification, Plaintiff bears the burden of affirmatively demonstrating he can satisfy <u>each</u> of the four requirements of Fed. R. Civ. P. 23(a), and he also bears the burden of demonstrating that the proposed classes satisfy the requirements of one of the three subparts of Fed. R. Civ. P. 23(b). *See, e.g., Dukes*, 131 S. Ct. at 2548-49. To satisfy Rule 23(a):

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012) (internal

12

citations omitted). Rule 23(b)(3), the basis for certification here, "requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Id.*

But as demonstrated below, Plaintiff's proposed class is not ascertainable, and Plaintiff fails to demonstrate numerosity, commonality, or typicality. Plaintiff also fails to establish predominance.

Notably, Plaintiff makes absolutely no mention of *Dukes* in his Brief, and makes little effort to satisfy the requirements for class certification established by the Supreme Court. As confirmed in *Dukes,* "Rule 23 does not set forth a mere pleading standard." 131 S. Ct. at 2551. To the contrary, "[a] party seeking class certification must <u>affirmatively</u> demonstrate" through competent evidence "compliance with the Rule." *Id.* (emphasis added). Accordingly, the Court must make findings as to whether this burden has been satisfied, and this requires the Court to engage in a "rigorous analysis," which "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Id. See also Comcast Corp. v. Behrend,* No. 11-864, -- U.S. --, 2013 WL 1222646, at *5 (Mar. 27, 2013) (reversing the Third Circuit and denying class certification where the lower court had failed to entertain arguments "pertinent to the merits determination," because Supreme Court precedent "requir[es]precisely that inquiry").

Indeed, the Supreme Court emphasized in *Dukes* the "necessity of touching

13

aspects of the merits in order to resolve [the] preliminary matter[]" of class certification and the need for the moving party to come forward with "significant proof." 131 S. Ct. at 2552-53. Thus, courts must resolve any "merits question" that bears on class certification, even if the plaintiff "will surely have to prove [the point] again at trial." *Id.* at 2552 n.6. *See also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) (rejecting the view that certification does not involve any inquiry into the merits and holding that where there is a factual dispute between the parties affecting the propriety of class certification, the district court should (indeed, must) look to the factual record and resolve the dispute based on a consideration of all relevant evidence).

## II.   PLAINTIFF FAILS TO CARRY HIS BURDEN TO JUSTIFY CLASS CERTIFICATION.

As noted above, Plaintiff did not bother to mention or address *Dukes* in his Brief, and he does not even begin to make the showing *Dukes* requires. For the reasons discussed below, Plaintiff's claims are not suitable for class treatment.

### A.   Plaintiff's Proposed Class Does Not Satisfy The Threshold Ascertainability Test.

Before determining whether the requirements of Rule 23 have been met, the Court must first inquire whether Plaintiff's proposed class definition is "readily ascertainable based on objective criteria." *Hayes v. Wal-Mart*, 281 F.R.D. 203, 210 (D. N.J. 2012) (Simandle, J.). "If class members are impossible to identify

without extensive and individualized fact-finding or 'mini-trials,'" then a class action is inappropriate. *Marcus*, 687 F.3d at 593. In *Hayes*, this Court noted that to answer the ascertainability question, it must engage in a two-part analysis. *Hayes*, 281 F.R.D. at 210. "First, the Court must determine whether the defined class specifies a particular group that was harmed during a particular time frame, in a particular location, in a particular way. Second, the Court must be able to ascertain the class's membership in some objective manner." *Id.* (internal quotations and citations omitted). Plaintiff did not address the ascertainability requirement, most likely because he knew he could not satisfy it.

Plaintiff proposes to certify a class of:

> All New Jersey consumers who, between October 7, 2010 and August 23, 2011, Asset Acceptance, LLC called using the telephone number 443-550-7962.

(DE 41 at 5). Although the Court may be able to ascertain the class members – Plaintiff has chosen to include 8,000 or so New Jersey customers that Asset called using the 7962 Number – this class definition, which excludes any mention of Caller ID and Warranty Services, is not sufficiently related to the Caller ID issues in this case. The proposed class includes all residents of New Jersey **regardless** of (1) whether they had Caller ID or (2) what company name appeared on their Caller ID. That is, although limited in time and location, the proposed class does not specify the "particular way" the class members were harmed. *Hayes*, 281 F.R.D.

at 210.[4]  The class members could not have been harmed simply by Asset making a telephone call.  There must be some connection to the class member having Caller ID and a company name other than Asset being disclosed.  For this reason alone, the class is wildly overbroad and not ascertainable.

### B.   Ascertainability Problems Exist Regardless Of How The Class Is Defined.

The class definition cannot be modified to fix the ascertainability defect. Even if Plaintiff maintained the original class definition – New Jersey consumers whose Caller ID displayed "Warranty Services" when Asset called using the 7962 Number – or required that each class member have Caller ID, neither would offer an objective manner in which to ascertain who was a member of the class for the following reasons.

First, neither Plaintiff nor Asset knows which consumers that Asset called had Caller ID during the relevant time period.  (Proctor Decl. ¶ 13).  "Forcing [Asset] to accept as true absent persons' declarations that they are members of the

---

[4]  Because consumers without Caller ID could not have been subject to the conduct at issue, the proposed class would include class members who suffered no harm and thus have no standing.  While Asset recognizes that various courts have held Article III standing in class actions is determined by the class representatives and not the class, other courts have disagreed.  *Compare In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998) (holding that Article III standing is determined "vis-a-vis the named parties), *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (finding that "no class may be certified that contains members lacking Article III standing") *and Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("Although federal courts do not require that each member of a class submit evidence of personal standing, a class cannot be certified if it contains members who lack standing.") (internal citations omitted).

class, without further indicia of reliability, would have serious due process implications." *Marcus*, 687 F.3d at 594. And, "[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials [as here], then a class action is inappropriate." *Id.*

Second, Plaintiff assumes, incorrectly, that every New Jersey debtor who received a call from the 7962 Number would have had "Warranty Services" displayed on their Caller ID. (DE 41 at 5). Plaintiff makes that "leap of faith" relying exclusively on the Affidavit of a former Asset employee. In addition to containing misstatements of fact about this case and caller identification technology in general, Mr. Shell's Affidavit, should be stricken under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)[5], to the extent it is considered expert testimony, and is otherwise not entitled to any weight because it lacks appropriate foundation and details supporting his "factual" conclusions.[6]

---

[5] Although *Daubert* discussed the admission only of scientific expert testimony, the Supreme Court has subsequently held that a trial judge's "gatekeeping" duty applies to expert testimony regarding "technical" and "other specialized" knowledge as well as "scientific" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Thus, under *Daubert*, this Court must evaluate Shell's testimony and make sure it "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597; *U.S. v. Davis*, 397 F. 3d 173, 178-79 (3d Cir. 2008).

[6] In *Dukes*, the Supreme Court expressed its "doubt" that "Daubert did not apply to expert testimony at the certification stage of class-action proceedings." 131 S.Ct. at 2541. *See also In re Hydrogen Peroxide*, 552 F.3d at 323, ("Expert opinion with respect to class certification, like any matter relevant to a Rule 23 requirement, calls for rigorous analysis.") (internal citations omitted); *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 81516 (7th Cir. 2010) ("[W]hen an experts' report or testimony is critical to class certification, as it is here . . . a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion").

17

Shell claims to understand, based on his "experience," the method by which telephone companies receive updates of "caller ID database changes." (Shell Aff. ¶ 10). Yet, Shell lays no foundation to explain what his alleged "experience" is, or how he might have any specialized knowledge regarding Caller ID services. Shell states only that he once was "in charge of all technology infrastructure at Asset," and "intimately knowledgeable about the services Omega Services provided for Asset Acceptance." *Id.* ¶¶ 2, 4. The mere fact that Shell once was employed by Asset as Director of Information Technology does not qualify Shell as an expert with respect to Caller ID services, including where CNAM names must be registered.

The lack of details or foundation in Shell's Affidavit is not limited to his alleged expertise; it includes his version of the facts as well. [7] Shell avers that "[a]ll caller Ids are stored in a national database called LIDB" and "[w]ith the LIDB database for Omega owned numbers [Asset] was using reading 'Warranty Services' all call recipients call ID displays would have read the same" 'Warranty Services'." *Id.* ¶¶ 8, 12. Shell provides no evidence of a "national database," or explanation of the term "LIDB." Shell also provides no documents evidencing that the 7962 Number actually was registered in this so-called "national database called

---

[7] For example, Shell claims Asset used a local New Jersey number to call Plaintiff and other class members in New Jersey (Shell Aff. ¶ 6), when the area code (434) is used only in the vicinity of Baltimore, Maryland.

LIDB" to be displayed as "Warranty Service," and nothing to contradict the evidence establishing that Omega registered the names "Warranty Services" (until 2008), "AACC" (July 2009-2010), and "AssetAcceptance" (2010 forward) in the appropriate database. (Gillen Decl. ¶¶ 14-15).

While Mr. Shell's "one database of names" theory is incorrect, he does acknowledge that Plaintiff's phone provider is responsible for accessing current information from a database. (Shell Aff. ¶ 9.) He thus implicitly acknowledges what Omega concludes happened, i.e., Comcast displayed "Warranty Services" on Plaintiff's Caller ID device because it did not access current information from the database where Asset's name was associated with the number it called from. (Gillen Decl. ¶ 18).

Caller identification is a bit more complex than Plaintiff or Mr. Shell believes. There is no one national database of the Caller ID names associated with telephone numbers. *Id.* ¶ 6. Omega registers the CNAMs for their clients in two different databases operated by two different SS7 Providers. *Id.* Omega uses the database of the SS7 provider that the owner of the number contracted to use. If the phone service provider of the customer who paid for the Caller ID service wants the most current Caller ID Name associated with the number being used to call its customer, it would make a "real-time/live inquiry" with the appropriate provider for each call. *Id.* ¶ 18. But not every phone service provider requests access to

19

those databases for every call requiring the disclosure of the Caller ID name. *Id.* Plaintiff (through Mr. Shell) fails to acknowledge this crucial point – that some phone providers may be disclosing inaccurate names on their Caller ID devices because they are relying on "old" data when they decide not to do a "real-time/live inquiry. Thus, "Warranty Services" may have appeared on Plaintiff's Caller ID device on June 13, 2011 because Comcast did not perform a real-time/live inquiry for that call, but instead relied on the outdated CNAM name "Warranty Services." (Gillen Decl. ¶ 18).

Plaintiff provides no evidence establishing that everyone with Caller ID would have received "Warranty Services" on their Caller ID display. The name displayed on class members' Caller ID devices (assuming they had Caller ID) would therefore depend on at least the following variables: (1) their phone service provider; (2) did their phone service provider obtain their Caller ID information from a SS7 Provider performing a real-time/live inquiry into its database or did it rely on its own database or that provided by another company, (3) could their phone service provider access the SS7 link to obtain the Caller ID name; and (4) was the debtor's Caller ID device working properly. There is thus an endless number of combinations possible for each and every class member. These variables require the "extensive and individualized fact-finding or 'mini-trials'"

that make the class not ascertainable, and a class action inappropriate. *Marcus*, 687 F.3d at 593.

## C.   Plaintiff Does Not Satisfy The Elements Of Rule 23(a).

Plaintiff bears the burden to affirmatively demonstrate he can satisfy each of the four requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy. *Dukes,* 131 S. Ct. at 2548-49; *Marcus,* 687 F.3d at 590-91. A failure to meet even one of these requirements is fatal to a certification request. *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 115 (D. N.J. 2003) *citing General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, (1982). And, here, Plaintiff cannot meet, at least, three of these requirements, i.e., numerosity, commonality, or typicality, and thus his claims are not suitable for class treatment.

### 1.   Plaintiff Cannot Satisfy The Numerosity Requirement.

Plaintiff cannot meet Rule 23(a)'s first requirement:  numerosity. While there is no "magic number," certainly, less than 10 is insufficient. *See General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm.*, 446 U.S. 318, 330 (1980) (suggesting 15 people is too low); *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001).

Plaintiff alleges that the proposed class includes 8,383 people.  (DE 41 at 9). As explained in Section II.A, *supra*, however, Plaintiff's proposed class definition

assumes that everyone in the class had Caller ID **and** that "Warranty Services" appeared on their Caller ID. Plaintiff presents no evidence establishing how many of the class members had Caller ID or any studies or statistics showing what percentage of the class may have had Caller ID. Plaintiff's failure has nothing to do with Asset's recordkeeping. Asset does not know which of the persons it called had Caller ID. (Proctor Decl. ¶ 13). Plaintiff therefore cannot use an over-inclusive class definition to satisfy the numerosity requirement. *See, e.g., Dudo v. Schaffer*, 82 F.R.D. 695, 699 (E.D. Pa. 1979) (internal citation omitted) (noting that "a court cannot determine whether the numerosity requirement has been satisfied until it evaluates any objections bearing on the proper scope of the class," and finding that proposed class members who have not suffered an injury have no claim and cannot be counted to satisfy Rule 23(a)'s numerosity requirement).

It is not surprising that Plaintiff uses an over-inclusive class definition to satisfy numerosity. Plaintiff spent approximately 15 months trying to satisfy numerosity for his original class definition and, notwithstanding a subpoena to the Better Business Bureau, discovery of Asset and advertisements by his attorneys, apparently discovered only one class member, who Asset found in a search of its records. (Asset's Supplemental Interrogatory Responses, Ex. B to Lemberg Decl., as attached to Plaintiff's Brief); (Lemberg Firm Advertisement, Ex. 6 to Easley Decl.); (DE 41 at 4).

22

2.   Plaintiff's Claims Are Not Sufficiently Common Or Typical To
Warrant Class Certification.

The United States Supreme Court has explained that commonality and typicality "tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim . . . and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2547. The Third Circuit has followed a similar approach. *See, e.g., Marcus*, 687 F. 3d at 597-98.

In *Dukes*, the Supreme Court gave a forceful affirmation that a putative class representative has an obligation to produce <u>common proof of class-wide liability</u> to justify class certification. 131 S. Ct. at 2551. That admonition compels this Court to deny Plaintiff's Motion because, like in *Dukes*, Plaintiff is unable to produce the significant evidence required to satisfy commonality and typicality requirements.

a.   *Commonality*

To satisfy commonality, a plaintiff must first demonstrate that the class claims depend on a common contention, and second, that the common contention is capable of class-wide resolution. *Id.* The *Dukes* court explained that the key inquiry when deciding to certify a class is whether proceeding as a class will generate, not just common questions, but common answers to those questions. *Id.* For example, at the heart of *Dukes* was the allegation that Wal-Mart had employed

23

a system that discriminated against its female employees with respect to pay and promotion. The court held that the class members' claims were not common because each class member's claim hinged on the potentially millions of answers "to the crucial question *why was I disfavored*." *Id.* at 2552 (italics in original).

Like the failed class in *Dukes*, the claims of the class members in Plaintiff's proposed class are not common. For the same reasons the class is not ascertainable, there is no commonality as well. The only thing class members share in common is that Asset called them using the same number. Some class members had Caller ID; others would not. For those who had Caller ID, the name of the company displayed on the device would be dependent on a variety of factors.

b.    *Typicality*

Although commonality and typicality are closely related and "tend to merge," typicality has independent legal significance given its ability to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus*, 687 F. 3d at 598. Plaintiff's claims are not typical because he is subject to two unique defenses.

First, Asset disclosed its name to Plaintiff during the call on June 13, 2011. The 6/13/11 call resulted in Asset leaving a voice message for Plaintiff in which it

24

identified its name.  (Proctor Decl. ¶¶ 13-15).  Plaintiff nevertheless claims Asset violated 15 U.S.C. § 1692d(6) by not providing meaningful disclosure of its name when Comcast disclosed a name other than Asset on his Caller ID device.  Even if Asset could be responsible for Comcast's transmission, which it is not, the only communication subject to the FDCPA was the voice message Asset left and not the Caller ID transmission.  *Glover v. Client Services, Inc.*, No. 1:07-CV-81, 2007 WL 2902209, at \*6  (E.D. Mich. Oct. 2, 2007) (rejecting claims, under FDCPA, that debt collector was responsible to give meaningful disclosure identity via a Caller ID device <u>both</u> prior to actually speaking with a debtor (or a recording device) <u>and</u> during any subsequent communication with the debtor (or a recording device)).

Second, to the extent Asset can be held responsible for the Caller ID transmission and it is a "communication" subject to the FDCPA, there was no material misrepresentation in violation of 1692e of the FDCPA because Plaintiff admitted he would have answered the phone if he knew Asset was calling.  A claim under section 1692e of the FDCPA requires a "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  "A statement cannot violate § 1692e unless it is material . . . " *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009) *citing Wahl v. Midland Credit Mgmt., Inc.*, 556 F. 3d 643, 646 (7th Cir. 2009); *see also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Donohue*

*v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  Because Plaintiff admits he is suing because he claims to have been deceived but testified that he would have answered the phone had the Caller ID displayed "Asset," Comcast's display of "Warranty Services" was not material.  (Bright Dep. Tr. at 67, 77, Ex. 5 to Easley Decl.).

### D.     Plaintiff Does Not Satisfy The Predominance Requirement Of Rule 23(b).

Plaintiff has the burden of demonstrating that his proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).  *See, e.g., Dukes*, 131 S. Ct. at 2548-49. Under Rule 23(b)(3), the basis for certification here, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members."  This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Marcus*, 687 F. 3d at 600, *quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The Court thus must examine each element of a legal claim "through the prism" of Rule 23(b)(3).  *Marcus*, 687 F. 3d at 600, *quoting In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011).  Plaintiff, then, must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members."  *Marcus*, 687 F. 3d at 600, *quoting Hydrogen Peroxide*, 552 F.3d at 311.  Indeed, just last week, the

26

Supreme Court reversed the certification of an antitrust class action because the district court failed to conduct a "rigorous analysis" of whether the testimony of the plaintiffs' damages expert satisfied Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate" over individualized questions. *Behrend*, -- U.S. --, 2013 WL 1222646, at *5.

Plaintiff has not satisfied his burden of demonstrating predominance.  In answering the question of whether Asset violated the FDCPA, the following individualized questions of fact, many of which were addressed above, predominate:

- Did the class member have Caller ID?
- Who was the class member's phone provider?
- Did the phone provider make a real-time/live inquiry for Asset's name or rely on "older" data?
- Did the class member answer the call from Asset?
- Did Asset leave a message for the class member?
- Did Asset disclose its name to the class member either in a prerecorded message or otherwise?

Moreover, Plaintiff cites no cases in which a court has certified a class in a case involving what was displayed on a caller identification device.  Instead, Plaintiff's only authority in support of predominance is *Pawelczak v. Fin. Recovery Services, Inc.*, 286 F.R.D. 381 (N.D. Ill. 2012).  *Pawelczak* is easily distinguishable from our case.  The only thing in common between the two cases is that each

27

plaintiff claimed the debt collector violated 15 U.S.C. § 1692d(6); everything else is different. There, the plaintiff sought to certify a class of consumers who received the same prerecorded message from the defendant that did not reveal the name of the debt collector or that it was an attempt to collect a debt. *Id.* at 384. Because the name of the collector and the disclosure was not in the message, the court had no trouble finding that common issues predominated over individualized issues.

Unlike *Pawelczak*, this Court must confront the issue of caller identification because Bright's class is based on what was disclosed on a caller identification device. Thus Plaintiff cannot "demonstrate that the elements of [his 1692d(6) or 1692e claims are] capable of proof at trial through evidence that is common to the class rather than individual to its members." *Marcus*, 687 F. 3d at 600, *quoting Hydrogen Peroxide*, 552 F.3d at 311. *See also Behrend*,-- U.S. --, 2013 WL 1222646, at *5 (confirming that damages must be "capable of measurement on a classwide basis").

First the Court must determine whether each class member had Caller ID. Then the Court will have to evaluate, for those debtors with Caller ID and for each call Asset made to a debtor in the class, the content of each class member's Caller ID display, and whether, for purposes of 1692d(6), the display constituted a meaningful disclosure of Asset's identity and the purpose of the call. The Court

28

also must determine whether Asset either left a message with or spoke to the debtor. For those debtors who received a message or had a live conversation in which Asset disclosed its name, its status as a debt collector, and the purpose of the call, the Court will have to evaluate whether such disclosure abrogates the information displayed on the debtor's Caller ID.

Plaintiff's request for actual damages only increases the number of individualized issues that predominate over the only common issue of Asset having called each member of the putative class. Plaintiff requests actual damages for himself and each class member in the Complaint. (DE 7 at 12). He confirmed this fact at his deposition by admitting he is seeking actual damages for alleged emotional harm caused by "Warranty Services" appearing on his Caller ID device. (Bright Dep. Tr. at 105-107). Determining the extent of each class member's actual damages would require individualized inquiry into the extent of each person's emotional distress and any actions they may have been forced to take in response (e.g., medical treatment). The predominance standard cannot be met when this type individualized inquiry is required. *See, e.g., Porter v. Nationscredit Consumer Disc. Co.*, 229 F.R.D. 497, 500 (E.D. Pa. 2005) *aff'd sub nom. Porter v. Nationscredit Consumer Disc. Co.*, 285 F. App'x 871 (3d Cir. 2008) ("Individual issues of actual damages preclude the predominance standard from being met due to factual disparities . . . [for] each of the thousands of class members"); *Leeseberg*

29

*v. Converted Organics Inc.*, No. 08-926, 2010 WL 4878380, at *3 (D. Del. Nov. 22, 2010) (finding that "individual issues as to whether each class member sustained economic injury overwhelm common questions among the class and preclude class certification with respect to actual damages"); *Harper v. Trans Union, LLC*, No. 04-3510, 2006 WL 3762035, at *8-9 (E.D. Pa. Dec. 20, 2006) (denying class certification due to the "individual factual inquiries" that would be required to prove actual damages).

Because of the individual inquiries and unique evidence applicable to each call recipient, call, and contact, individual questions of fact and law do not predominate. Plaintiff has not satisfied Rule 23(b)(3).

## **CONCLUSION**

For the foregoing reasons, Asset respectfully requests that this Court deny Plaintiff's motion for class certification. Asset further requests any other relief that the Court deems appropriate.

Dated: April 1, 2013

ASSET ACCEPTANCE, LLC

Respectfully Submitted,

/s/ Aaron R. Easley
Aaron R. Easley, Esq.
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
200 Route 31 North, Suite 203
Flemington, NJ 08822
Telephone No.: (908) 751-5940
Facsimile No.: (908) 751-5944
aeasley@sessions-law.biz
Attorney for Defendant