IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEFFREY BRIGHT, on behalf of himself and all others similarly situated, | HON. JEROME B. SIMANDLE |
|  | Civil No. 11-5846 (JBS/JS) |
| Plaintiff, |  |
|  | **OPINION** |
| v. |  |
| ASSET ACCEPTANCE, LLC |  |
| Defendant. |  |

APPEARANCES:

Sofia Balile, Esq.
LEMBERG AND ASSOCIATES
1100 Summer Street
3rd Floor
Stamford, CT 06905
        Attorneys for Plaintiff Jeffrey Bright

Aaron Raphael Easley, Esq.
Ross Stevens Enders, Esq.
SESSIONS FISHMAN NATHAN & ISRAEL LLC
200 Route 31 North
Suite 203
Flemington, NJ 08822
        Attorneys for Defendant Asset Acceptance, LLC

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter is before the court on the motion of Plaintiff Jeffrey Bright ("Plaintiff") for class certification [Docket Item 41] and his motion to seal confidential documents [Docket Item 40].  The Defendant Asset Acceptance, LLC ("Defendant" or "Asset") filed opposition to the motion for class certification.

Oral argument was held on May 22, 2013.

In this action, Plaintiff alleges Defendant violated the Fair Debt Collection Practices Act ("FDCPA") when Asset called New Jersey consumers from a telephone number which falsely displayed the name "Warranty Services" on the consumers' caller identification devices.  As a result, Plaintiff alleges consumers were misled about the identity of the caller as a debt collection agency in direct violation of the FDCPA.  Plaintiff brought the instant action on behalf of himself and all others similarly situated and now seeks class certification. [Docket Item 3.]

For the reasons set forth below, the Plaintiff's motion for class certification will be denied.

## II.   BACKGROUND

### A. Factual Background

Defendant Asset Acceptance, LLC, collects debt.  (Decl. of Sergei Lemberg, Ex. B, Supp. Int. 2.)  To collect debt, Asset calls delinquent debtors who are frequently hard to reach.  (Langusch Tr. 22:8-23:9.)

In January 2005, Asset acquired Plaintiff Bright's account for an unpaid cell phone bill.  (Supp. Int. 7.)  The original creditor of this account was Sprint PCS.  (Pl.'s Ex. E, Dep. of Kenneth Proctor ("Proctor Dep.") at 80:1-15.)  According to Asset's collection database, the statute of limitations on Bright's account had expired in October, 2003.  (Id. at 81:9-22.)

Bright first spoke with Asset on February 25, 2011.  (Pl.'s Ex. F, Bright Account Notes, 2/25/2011 12:34 PM entry.)  Bright informed Asset he did not remember the account and requested documentation of the Sprint debt.  (Id.)

Over the next several months, Asset continued to call Bright.  (See generally Pl.'s Ex F, Bright Account Notes.)  One such call occurred on June 13, 2011.  (Proctor Dep. at 92:25-93:19.)  On this call, the name "Warranty Services," not "Asset Acceptance," appeared on Plaintiff's caller identification display along with the telephone number 443-550-7962.  (Bright Aff. at ¶¶6-8 and Caller ID photo attached as Bright Ex. A.)  Plaintiff did not answer this phone call and Asset left a message for Bright which correctly disclosed that the call was from "Asset Acceptance."  (Def.'s Ex. 2, Decl. of Kenneth Proctor ("Proctor Decl.") at ¶ 15.)  Plaintiff testified in his deposition that had the caller ID displayed the correct name, "Asset Acceptance," rather than "Warranty Services," he would have answered the phone call.  (Def.'s Ex. 5, Deposition of Jeffrey Bright ("Bright Dep.") at 77:1-25.)  In other words, the Plaintiff would not have avoided answering the phone if he knew Asset was calling rather than "Warranty Services."

In opposition to this motion for class certification, Defendant relies on the Declaration of Christopher Gillen, the Operations Manager of Omega Services, LLC ("Omega").  Non-party

Omega provides caller ID display services to its clients, including Asset. (Def.'s Ex. 1, Decl. of Christopher Gillen ("Gillen Decl.") at ¶ 10.) Asset has a Master Services Agreement with Omega wherein Omega agreed to provide Asset with caller ID display and management services for Asset's use in Asset's customer contact centers. (Id.; Pl.'s Ex. C., Master Services Agreement.) For purposes of caller ID, companies are allowed to register a name of up to 15 characters to be associated with their telephone numbers, commonly referred to as a "CNAM." (Gillen Decl. ¶ 5.) Omega assigns telephone numbers to Asset for use at Asset's calling centers and registers those numbers and the CNAM Asset wants associated with those numbers in two separate databases operated by different Signaling System Seven Providers ("SS7 Provider"). (Gillen Decl. ¶¶ 6, 11.)

Caller ID services provide additional information by associating the number called from with a caller name. (Gillen Decl. ¶ 5.) Local Exchange Carriers ("LEC"), or phone providers, such as Comcast or AT&T, contract with an SS7 provider in order to access a number's CNAM for caller ID service. At the time of an incoming call, the LEC makes an inquiry searching the SS7 provider's database to learn the CNAM associated with the phone number and display it on a caller ID device. (Gillen Decl. ¶¶ 6-7.) Omega registers CNAMs in separate databases operated by two different SS7 providers.

Omega acquired the right to assign the 443-550-7962 telephone number from Nationsline which previously owned the 7962 number. (Gillen Decl. ¶ 12.) Omega first assigned the 7962 number to a company named IGPEN, Inc., and updated a calling name database to associate the CNAM "Warranty Services" with the 7962 number. (Gillen Decl. ¶ 12.) IGPEN stopped using the number on or about September 3, 2008. (Id.)

Ten months later, on or about July 20, 2009, Omega assigned the 7962 number to Asset for Asset's exclusive use. (Gillen Decl. ¶ 14.) Asset then requested Omega to associate the 7962 number with the CNAM "AACC," the abbreviation for Asset's parent company, Asset Acceptance Capital Corp. (Gillen Decl. ¶ 14.) On July 9, 2010, Asset accessed Omega's Caller ID management tool through the Internet and instructed the name associated with the 7962 number be changed from "AACC" to "ASSETACCEPTANCE." (Gillen Decl. ¶ 15.) Omega processed Asset's request the same day by registering the new name in the SS7 provider's database. (Gillen Decl. ¶ 15; Def.'s Ex. 4, Declaration of Donna Kingdon ("Kingdon Decl.") ¶ 4.) Since July 9, 2010, Asset has sought periodic confirmation from Omega that the CNAM associated with the 7962 number remained "ASSETACCEPTANCE" and Omega continually confirms this information. (Gillen Decl. ¶ 19.) There is no evidence in the record that Asset instructed Omega to associate the CNAM "Warranty Services" with the 7962 number. Asset alleges that it

had duly registered its correct name, through Omega, in the SS7 provider's database and that Plaintiff's own telephone service provider - Comcast - is responsible for failing to update its caller ID database accordingly, so that Comcast displayed the "Warranty Services" name due to its use of the outdated database.

In support of his motion for class certification, Plaintiff Bright submitted the affidavit of Jay Shell, the Director of Information Technology at Asset until May 2011. (Decl. of Jay Shell ("Shell Decl.") ¶ 2.) Shell confirmed that Omega provides its clients, including Asset, a computerized interface that enables the clients to change the outbound caller ID as well as the name of the caller appearing on the recipient's caller ID. (Id. at ¶ 7.) Shell also corroborated Gillen's declaration that Local Exchange Carriers, such as Comcast or AT&T, "dip" into a database in order to update the caller ID for their customers and the Local Exchange Carriers are responsible for updating the caller ID list for their customers. (Id. at ¶ 9.) However, Shell stated that the CNAM database was a national database whereas Defendant's witness, Christopher Gillen, declared that there are multiple SS7 Providers that maintain CNAM databases and Local Exchange Carriers contract with different SS7 Providers to access their databases. Gillen also stated that Omega updates CNAM information on two different SS7 databases.

Plaintiff's witness, Shell, avers that Asset believed that

changing the caller ID from its original numbers to a different number within the area code of the delinquent debtor increased the chance of the debtor picking up the telephone. (Id. at ¶ 6.) Shell declared that Asset Acceptance contracted with Omega because Omega enabled Asset Acceptance to change or alter the information appearing on the debtors' caller ID devices when Asset called. (Id. at ¶ 5.)

Prior to Plaintiff Bright's June 3, 2011 phone call, Asset had two prior complaints from consumers that the 7962 number was appearing as "Warranty Services" on their caller ID. First, in June 2010, Jeremy Bristol from Las Vegas, NV, filed a complaint with the Better Business Bureau that he received an automated message on his answering machine. "The caller ID shows WARRANTY SERVICE, 443-550-7962, but the automated message stated it was from a Paul Nolan a Debt Collector from Asset Acceptance at 866-580-4816." (Pl.'s Ex. H, BBB Subpoena Response at 8-9.) On June 24, 2010, Asset responded to the complaint and replied that "Warranty Services" was wrongly displayed because the complainant's phone carrier had not updated their caller ID information. (Id.)

The second complaint arose from a telephone call from an Asset employee with a purported debtor on April 13, 2011. The purported debtor told the Asset employee that he would not pay any debts over the phone since the phone number came up as

"Warranty Services" and not Asset Acceptance.  (Pl.'s Ex. I, Reeves Account Notes.)

There is no evidence in the record that any other phone numbers used by Asset had this problem where the caller ID displayed the wrong name.

Despite these two complaints, Asset did not cease using the 7962 number.  Between October 7, 2010 and August 23, 2011, Asset called 8,383 accounts concerning persons believed to have New Jersey telephone numbers using the 7962 number.  (Supp. Int. 5.)

**B. The Instant Motion**

In his motion, the Plaintiff argues that class certification is appropriate because he has satisfied all the prerequisites under Rule 23.  The Plaintiff seeks to certify his Fair Debt Collection Practices claims on behalf of the following class:

> **All New Jersey consumers who, between October 7, 2010 and August 23, 2011, Asset Acceptance, LLC called using the telephone number 443-550-7962.**

The Plaintiff alleges Asset's use of the 7962 number when Asset knew the number displayed the name "Warranty Services" on caller identification devices violated 15 U.S.C § 1692d(6) of the FDCPA. In particular, Plaintiff alleges Asset failed to meaningfully disclose its identity to the recipient of the telephone call.  In addition, Plaintiff brings a claim for violating 15 U.S.C. § 1692e(10) & e(14).  Plaintiff alleges Asset's use of the 7962 number was a deceptive means to collect a debt and that the use

of any business, company or organization name other than the true name of the debt collector's business violates the FDCPA.

The Plaintiff maintains that he has satisfied all four factors under Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3) to warrant class certification in this matter. First, the Plaintiff argues that numerosity has been met because discovery has shown that Asset placed at least one call using the 7962 number to 8,383 separate persons between October 7, 2010 and August 23, 2011. Plaintiff contends that this high number of transactions makes joinder difficult and impracticable. Therefore, a class action is more efficient and expedient.

Second, the Plaintiff maintains that the typicality requirement is satisfied. The Plaintiff states that his claim arises from the same course of conduct as all other class members, namely receiving a call from Asset Acceptance from the 7962 number which falsely displayed the name "Warranty Services" on Plaintiff's caller I.D. Here, Plaintiff argues that his claim is identical to the claim he seeks to pursue on behalf of the class and therefore, the typicality requirement is met.

Third, the Plaintiff contends that he will fairly and adequately protect the interests of the class. The Plaintiff argues that his claims are essentially identical to the class and his interests are not antagonistic to the class. In addition,

the Plaintiff maintains that his attorneys are qualified and have experience litigating class action cases.

Finally, the Plaintiff argues that he satisfies both the commonality requirement of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3). The Plaintiff maintains that common questions of law and fact predominate and contends that the elements of his FDCPA claims can be satisfied through common proofs. In addition, Plaintiff maintains that proceeding on a class basis is a superior means of adjudication. First, Plaintiff argues that the interests of individual class members to control the litigation would not be frustrated by class certification since no class members have initiated a similar action. Plaintiff also asserts that due to the small amount of recovery for individual class members, it is highly desirable and appropriate to litigate the class claims together in a single forum.

Therefore, the Plaintiff argues that his motion for class certification should be granted and that a Rule 23(b)(3) class be certified.

The Defendant opposes this motion on four main grounds. First, the Defendant argues that Plaintiff's proposed class is not ascertainable because there is no way to determine which proposed class members receiving a call from the 7962 number had caller ID and what company name appeared on the caller ID.

Specifically, Defendant argues that the proposed class definition does not identify the particular way the class members were harmed. Further, Defendant maintains that there is no objective way to ascertain who is a member of the purported class without individual fact-finding. Since there is no class-wide method for determining who is or is not a class member, Defendant argues that Plaintiff's motion be denied.

Next, the Defendant disputes whether the Plaintiff has satisfied his burden to show by a preponderance of the evidence that the class is sufficiently numerous to warrant class certification. Defendant does not dispute that 8,383 calls were made during the class period from the 7962 number. However, Defendant contends that Plaintiff has presented no evidence showing how many of these calls were made to individuals with caller ID and that "Warranty Services" was displayed on their caller ID. Defendant argues that after 15 months of discovery and advertising by Plaintiff's counsel, Plaintiff was only able to identify one other individual in New Jersey who received a call from the 7962 number and the name "Warranty Services" was displayed on the caller ID. Defendant contends that Plaintiff cannot use an overbroad class definition to satisfy the numerosity requirement. Since Plaintiff has no evidence to substantiate the numerosity requirement, Defendant urges the court to deny his motion for class certification.

Third, Defendant argues that Plaintiff's claims are not typical of the class because Plaintiff is subject to two unique defenses. First, Asset disclosed its name to the Plaintiff when leaving a voicemail during the June 13, 2011 call. Consequently, even though the caller ID displayed the name "Warranty Services," Asset's voicemail message fully disclosed its name and its purpose in calling - to collect a debt. Second, Plaintiff admitted in his deposition that he would have answered the phone if he knew Asset was calling. Therefore, displaying the name "Warranty Services" on Plaintiff's caller ID was not a material misrepresentation and did not violation the FDCPA.

Finally, the Defendant argues that individual issues predominate and the Plaintiff has not satisfied Rule 23(b)(3). The Defendant argues that there are individual questions with regard to whether Defendant violated the FDCPA. In particular, Defendant argues the following questions are relevant to whether class members have a viable claim and must be answered on an individual basis: (1) did the class member have caller ID; (2) who was the class member's phone provider; (3) did the phone provider make a real-time/live inquiry for Asset's name or rely on "older" data; (4) did the class member answer the call from Asset; (5) did Asset leave a message for the class member; (6) did Asset disclose its name to the class member either in a prerecorded message or otherwise. These individualized

questions, the Defendant argues, prevent class certification.

To the extent answering these questions requires the Court to look into the merits of Plaintiff's claims, Defendant argues this is not inappropriate and relies on two recent decisions by the Supreme Court: <u>Wal-Mart v. Dukes</u>, 131 S. Ct. 2541 (June 20, 2011) and <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426 (Mar. 27, 2013). In both decisions, the Supreme Court emphasized that Fed. R. Civ. P. 23 "does not set forth a mere pleading standard" and "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" and "[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." <u>Comcast Corp.</u>, 133 S. Ct. at 1432 (quoting <u>Dukes</u>, 131 S. Ct. at 2551-2552). The Supreme Court reiterated that the class certification analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim. . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." <u>Id.</u> (quoting <u>Dukes</u>, 131 S. Ct. at 2551). While the Supreme Court's pronouncements in <u>Behrend</u> and <u>Dukes</u> require evidentiary proof that the elements of Rule 23(a) and (b)(3) are met in this instance, they do not go so far as to require the plaintiff seeking class certification to also prove

13

that the class will succeed on its claims; a summary judgment motion remains the vehicle for determining sufficiency of the plaintiff's evidence before trial, and no summary judgment motion is presented here.

Therefore, Defendants maintain the Plaintiff has failed to meet his burden of proof and his motion for class certification should be denied.

## III.  DISCUSSION

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 133 S. Ct. at 1432 (citing Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)).  In order to meet the requirements of this exception, a party moving to represent a class "must affirmatively demonstrate his compliance with Rule 23." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551-2552.

The Third Circuit has emphasized that "actual, not presumed, conformance with Rule 23 requirements is essential." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." Id.

In order to analyze whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings" and address the merits of a plaintiff's claims.

Id. See also Dukes, 131 S. Ct. at 2551-2552.  A district court

must engage in a "rigorous analysis" under Rule 23(a) to

determine whether the requirements of class certification are

satisfied.  Dukes, 131 S. Ct. at 2551.  This rigorous analysis

will frequently recognize the overlapping between the merits of

the plaintiff's claim and the satisfaction of class certification

requirements.  Behrend, 133 S. Ct. at 1432 (citations omitted).

If a party satisfies the requirements of Rule 23(a), a

district court must then evaluate whether one of the provisions

of Rule 23(b) are satisfied.  The same analytical principles

pertaining to Rule 23(a) apply to Rule 23(b).  Behrend, 133 S.

Ct. at 1432.  The Supreme Court has cautioned that "Rule

23(b)(3)'s predominance criterion is even more demanding than

Rule 23(a)" because Rule 23(b)(3) "is designed for situations in

which class-action treatment is not as clearly called for."

Behrend, 133 S. Ct. at 1432 (citations omitted).  A trial court

has a "duty to take a close look at whether common questions

predominate over individual ones."  Id. (citations omitted).

## A.   Ascertainability

Prior to determining whether the requirements of Rule 23

have been met, the Court must first analyze whether the

Plaintiffs' proposed class definition is "readily ascertainable

based on objective criteria." Agostino v. Quest Diagnostics Inc.,

256 F.R.D. 437, 478 (D.N.J. 2009).

> "While class definitions obviously are tailored to the
> specifics of every case, important elements of defining
> a class include: (1) specifying a particular group that
> was harmed during a particular time frame, in a
> particular location, in a particular way; and (2)
> facilitating a court's ability to ascertain its
> membership in some objective manner." <u>Bentley v.
> Honeywell Int'l Inc.</u>, 223 F.R.D. 471, (S.D. Ohio 2004)
> (citing <u>Crosby</u>, 796 F.2d at 580). Although "Plaintiffs
> need not prove that class members have been injured for
> purposes of defining the [classes], Plaintiffs' class
> definitions must have some relation to the Defendant['s]
> activities." <u>O'Connor v. Boeing North American, Inc.</u>,
> 184 F.R.D. 311, 320 (C.D. Cal. 1998).

<u>Rowe v. E.I. Dupont De Nemours & Co.</u>, 262 F.R.D. 451, 455 (D.N.J. 2009).

In order to determine whether a proposed class is ascertainable, the Court must engage in a two part analysis. First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." <u>Rowe</u>, 262 F.R.D. at 455. Second, the Court must be able to ascertain the class's membership in some objective manner. <u>Id.</u>

In this case, the Defendant argues that the Plaintiff's proposed class is not ascertainable because the proposed class definition does not specify how members were harmed by Defendant's conduct. In addition, Asset maintains that the class definition cannot be modified to fix the ascertainability defect because there is no objective manner to determine class membership.

Here, as noted above, the Plaintiff has proposed the

following definition of the class:

> **All New Jersey consumers who, between October 7, 2010 and August 23, 2011, Asset Acceptance, LLC called using the telephone number 443-550-7962.**

This definition identifies a particular group, New Jersey consumers, and a particular time frame, October 7, 2010 through August 23, 2011. However, Plaintiff's proposed definition defines the harm to the group as receiving a call from Asset Acceptance from the 7962 telephone number. This is not the harm that is the basis of Plaintiff's FDCPA allegations in this case. Rather, the alleged harm in this case is having the name "Warranty Services" display on a consumer's caller ID device when in fact Asset Acceptance was calling. This harm is entirely absent from the class definition.

Therefore, the class definition is overbroad and includes members who do not have caller ID services and consequently, would not have viable FDCPA claims. It is also overbroad even if limited to members with caller ID services because the content of the caller ID depends upon who the member's carrier was; it is unproven that any carrier other than Comcast (who served Plaintiff) had this problem of failing to update its database from Omega's corrected SS7 database.

Even if the Court were to revise the proposed class definition, the Plaintiff has offered no objective way to ascertain who is a member of the class. "[I]f class members are

impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." Marcus v. BMW of N. Am., LLC, 687 F.3d at 593. The Third Circuit, for example, has explained that a class definition may fail "where nothing in company databases shows or could show whether individuals should be included in the proposed class." Marcus, 687 F.3d at 593.

In this case, the Plaintiff has come forward with no reliable or administratively feasible way of identifying members of the proposed class. Specifically, members of the proposed class would need to have (1) received a call from Asset Acceptance from the 7962 number; (2) have caller ID services; and (3) the name "Warranty Services" would need to have appeared on the caller ID when the consumer received the call from the 7962 number.

Neither Plaintiff nor Asset knows which consumers that Asset called had caller ID during the relevant time period. This information is not contained within Asset's computer databases. The Plaintiff has put forth no feasible method of ascertaining members of the class despite 15 months of discovery to determine the identity of class members.

Therefore, Plaintiff's proposed class is not ascertainable and Plaintiff's motion for class certification will be denied.

**B.    Rule 23(a)**

Even though Plaintiff's class definition is not readily ascertainable, in the interest of thoroughness, the Court will still address the requirements of Rule 23(a) and Rule 23(b). Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Where, as here, "an action is to proceed under Rule 23(b)(3), the commonality requirement [of Rule 23(a)] is subsumed by [Rule 23(b)(3)'s] predominance requirement." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008) (internal quotations and citations omitted). This Rule 23(a) discussion accordingly accounts for the numerosity, typicality, and adequacy factors, leaving the consideration of commonality for the discussion of Rule 23(b)(3) predominance, infra. See id.

### 1. Numerosity

Rule 23(a)(1) provides that class certification should not be granted unless the potential membership of the proposed class is "so numerous that joinder of all members is impracticable." Specifically, "impracticability refers to the degree of difficulty or inconvenience involved in joining all members of

19

the proposed class in accordance with Rule 19." <u>Cannon v. Cherry Hill Toyota, Inc.</u>, 184 F.R.D. 540, 543 (D.N.J. 1998).  When determining whether numerosity is satisfied, a court should consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." <u>Id.</u>  <u>See</u> <u>also</u> <u>Dewey v. Volkswagen of Am.</u>, 728 F. Supp. 2d 546, 566 (D.N.J. 2010).

In addition, the "plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible." <u>Cannon</u>, 184 F.R.D. at 543.  As the Court of Appeals has explained, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).

In this case, Plaintiff Bright has evidence that Asset made 8,383 phone calls to New Jersey consumers during the class period from the 7962 number.  The Plaintiff has not produced any evidence showing what portion of these 8,383 consumers had caller ID and which consumers' caller ID's displayed the name "Warranty Services."  Instead, Plaintiff argues that he "need only show that common sense suggests that it would be impracticable to join all members of the proposed class."  (Pl.'s Reply at 5-6.)

20

Plaintiff further maintains that "[c]ommon sense and logic
dictate that 40 or more of those individuals have caller ID."
(Pl.'s Reply at 6.)

The Supreme Court has held that a plaintiff "must be
prepared to prove that there are *in fact* sufficiently numerous
parties." Dukes, 131 S. Ct. at 2551. The Third Circuit has
reiterated "that actual, not presumed, conformance with Rule 23
requirements is essential." Marcus, 687 F.3d at 591. Common
sense and speculation will not meet the Plaintiff's burden of
proof.

Further, after 15 months of discovery, the Plaintiff has
only managed to identify one other person in New Jersey, besides
himself, who received a call from Asset's 7962 number and
"Warranty Services" was displayed on the consumer's caller ID.
During this time period, Plaintiff's counsel advertised in New
Jersey seeking out class members who received a call from Asset's
7962 number and whose caller ID identified "Warranty Services."
After this extensive period of discovery, only one additional
putative class member came forward. (Lemberg Decl. Ex. B,
Asset's Supplemental Interrogatory Responses; Easley Decl. Ex. 6,
Lemberg Firm Advertisement.)

Nonetheless, we also know that a substantial fraction of
consumers have caller ID on their mobile phones or landlines.
Any fraction more than 5 percent would produce a potential class

of at least 400 calls that would be in play.  It is the problems

with ascertainability of the class, and not its numerosity, that

precludes the requisite degree of certainty of the number of

class members for purposes of certification.  Thus, while the

Court will assume that sufficient evidence of numerosity of the

class exists, it is not necessary to make this determination in

light of the other deficiencies in Plaintiff's motion, as

discussed above and below.

## 2. Typicality

To address the question of typicality, the Court assesses:

> whether the named plaintiffs' claims are typical, in
> common-sense terms, of the class, thus suggesting that
> the incentives of the plaintiffs are aligned with those
> of the class.  Factual differences will not render a
> claim atypical if the claim arises from the same event or
> practice or course of conduct that gives rise to the
> claims of the class members, and if it is based on the
> same legal theory.

Beck, 457 F.3d at 295-96 (internal quotations and citations

omitted).  Put differently, "[t]ypicality entails an inquiry

whether the named [plaintiffs'] individual circumstances are

markedly different or the legal theory upon which the claims are

based differs from that upon which the claims of other class

members will perforce be based."  Hassine v. Jeffes, 846 F.2d

169, 177 (3d Cir. 1988) (internal quotations and citations

omitted).

The named Plaintiff's claims in this case "arise[] from the

same . . . practice or course of conduct that gives rise to the

claims of the class members," and are based on the same legal theory. Beck, 457 F.3d at 295-96 (internal quotations and citations omitted). The Plaintiff has alleged that he, like the absent class members, received a call from Asset's 7962 number which displayed the name "Warranty Services" on his caller ID. The Plaintiff has thus alleged that he "suffered harm as the result of the same company-wide conduct that injured the absentee class members," meaning that the typicality criterion is satisfied here. In re Prudential Ins. Co. of America Sales Practice Litigation Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998).

Defendant Asset does not challenge that Plaintiff's claims arise from the same course of corporate conduct as the absent class members. Instead, Defendant Asset argues that Plaintiff does not meet the typicality prong because the Plaintiff is subject to two unique defenses.

First, on the June 13, 2011 call, while Plaintiff's caller ID displayed "Warranty Services," Asset left a voicemail which clearly disclosed that Asset Acceptance was calling and the purpose of the call was to collect a debt. Consequently, Asset argues that it provided meaningful disclosure of its name despite the error on the caller ID. Second, Asset argues that Plaintiff testified he would have answered the phone even if the caller ID correctly displayed the name "AssetAcceptance." Therefore, the

misrepresentation on the caller ID was not material to the Plaintiff and Defendants argue that it cannot be a basis for an FDCPA claim.

"It is well established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" Marcus, 687 F. 3d at 599 (citations omitted). A unique defense might result in the representative "devot[ing] time and effort to the defense at the expense of issues that are common and controlling for the class." Id. (citations omitted). See also Steamfitters Local 449 Pension Fund v. Central European Distribution Corp., No. 11-6247, 2012 U.S. Dist. LEXIS 118693, **26-32 (D.N.J. August 22, 2012)(finding that presumptive lead plaintiff not typical or adequate to represent a class because plaintiff was subject to unique defenses).

Here, the first issue raised by Asset regarding the voicemail left for the Plaintiff is not unique and could arguably be an issue that absent class members would face. Importantly, the voicemail left for the Plaintiff disclosing Asset's name was the result of a pre-scripted prompt used regularly by Asset. (Def.'s Ex. 2, Decl. of Kenneth Proctor ("Proctor Decl.") at ¶ 15.) Consequently, other absent class members might have received the same prerecorded message and this issue could be

common to the class.  This defense may impair the claim of Mr.
Bright and many class members, but the circumstance does not
appear to be atypical.

Second, Plaintiff's deposition testimony indicating that he
would have answered the call even if "AssetAcceptance" displayed
on the caller ID may well be unique, as Plaintiff must overcome
this fact to demonstrate that Defendant's misrepresentation was
material.  However, there is no evidence that this defense will
become a major focus of the litigation or that the Plaintiff will
devote a large amount of time and effort to this defense at the
expense of issues that are common and controlling for the class.

Therefore, these two defenses will not prevent the Plaintiff
from satisfying the typicality requirement of Rule 23(a).

### 3. Fairness and Adequacy

The final Rule 23(a) consideration is whether "the
representative parties will fairly and adequately protect the
interests of the class."  Fed. R. Civ. P. 23(a)(4).  With regard
to Rule 23(a)'s adequacy prong, the Court of Appeals has
explained that the Court's task is to address whether "the
putative named plaintiff has the ability and the incentive to
represent the claims of the class vigorously, that he or she has
obtained adequate counsel, and that there is no conflict between
the individual's claims and those asserted on behalf of the
class."  <u>Hassine</u>, 846 F.2d at 179.  "Adequate representation

depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." <u>Wetzel v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975).

The Defendant does not dispute that both of these factors are present here. Plaintiff's attorneys have substantial experience with class actions, and have litigated this matter zealously. In addition, the Plaintiff and the class members purportedly suffered harm from the same alleged course of conduct: the Defendant displaying the name "Warranty Services" rather than "AssetAcceptance" on their caller ID. Accordingly, Plaintiff's interests are not antagonistic to those of the class. Therefore, the fairness and adequacy requirement is satisfied in this case.

### C. Commonality under Rule 23(a) and Predominance under Rule 23(b)(3)

The commonality requirement under Rule 23(a) requires "a plaintiff to show that there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not mean merely that [class members] have all suffered a violation of the same provisions of law." <u>Dukes</u>, 131 S. Ct. at 2551. Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." <u>Id.</u> In order to satisfy the commonality prong, a plaintiff must affirmatively

26

show that "a classwide proceeding" would "generate common *answers* apt to drive the resolution of the litigation." Id. at 2551.

In addition to the requirements of Rule 23(a), the Plaintiff must also satisfy one of the alternative requirements of Rule 23(b) to certify the proposed class. The Plaintiff argues that Rule 23(b)(3) is satisfied and maintains that common questions of law or fact predominate and that the class action is superior to other methods for adjudicating the case.

Rule 23(b)(3) provides that a class action may be maintained only if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "The twin requirements of Rule 23(b) are known as predominance and superiority." In re Hydrogen Peroxide, 552 F.3d at 310. The predominance requirement is "far more demanding than the commonality requirement of Rule 23(a)" and requires more than the showing of a common claim. Id. at 311.

The Court of Appeals has explained the demanding standard under Rule 23(b)(3)'s predominance requirement:

> This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). To assess predominance, a court at the certification stage must examine each element of a legal claim "through

27

the prism" of Rule 23(b)(3). <u>In re DVI, Inc. Sec. Litig.</u>,
639 F.3d 623, 630 (3d Cir. 2011). A plaintiff must
"demonstrate that the element of [the legal claim] is
capable of proof at trial through evidence that is common
to the class rather than individual to its members."
<u>Hydrogen Peroxide</u>, 552 F.3d at 311. "Because the nature
of the evidence that will suffice to resolve a question
determines whether the question is common or individual,
a district court must formulate some prediction as to how
specific issues will play out in order to determine
whether common or individual issues predominate in a
given case." <u>Id.</u> (quotation marks omitted).

<u>Marcus</u>, 687 F.3d at 600. The Supreme Court recently examined the

predominance requirement and commented that "Rule 23(b)(3), as an

adventuresome innovation, is designed for situations in which

class-action treatment is not as clearly called for." <u>Behrend</u>,

133 S. Ct. at 1432 (citations omitted). In <u>Behrend</u>, the Supreme

Court held that class certification is inappropriate when

"[q]uestions of individual damage calculations will inevitably

overwhelm questions common to the class." <u>Id.</u>

In this case, Plaintiff alleges three violations the FDCPA.

First, the Plaintiff alleges Asset's use of the 7962 number when

Asset knew the number displayed the name "Warranty Services" on

caller identification devices violated 15 U.S.C § 1692d(6) of the

FDCPA. In addition, Plaintiff brings a claim for violating 15

U.S.C. § 1692e(10) & e(14). Plaintiff alleges Asset's use of the

7962 number was a deceptive means to collect a debt and that the

use of any business, company or organization name other than the

true name of the debt collector's business violates the FDCPA.

Defendant Asset argues that the underlying violations of the

FDCPA are not capable of proof at trial through evidence that is common to the class. In addition, Defendant Asset argues that the damages calculation requires individual treatment and cannot be met through common proofs, especially since Plaintiff Bright is seeking actual damages to compensate for emotional harm rather than merely statutory damages. Plaintiff provides no methodology to calculate actual damages on a classwide basis.

Defendant Asset argues that the following questions are relevant to whether Asset violated the FDCPA:

1) Did the class member have caller ID?
2) Who was the class member's phone provider?
3) Did the phone provider make a real-time/live inquiry for Asset's name or rely on "older" data?
4) Did the class member answer the call from Asset?
5) Did Asset leave a message for the class member?
6) Did Asset disclose its name to the class member either in a prerecorded message or otherwise?

Plaintiff argues that these questions do not defeat the predominance requirement. Plaintiff argues that the main questions of this litigation are common to the class, specifically: (1) whether Defendant's calls from the 7962 number provided meaningful disclosure of its identity to the consumers it was contacting; and (2) whether Defendant used a business or company name other than its true name when making calls from the 7962 number. Plaintiff does not address the role of the class member's phone provider in displaying the wrong CNAM on the caller ID device. Plaintiff admits that calculating actual damages would require individualized factfinding but argues that

this should not prevent class certification.  Plaintiff relies on case law outside the Third Circuit and prior to the Supreme Court's decisions in <u>Behrend</u> and <u>Dukes</u>.

The Court finds that the predominance requirement is not met in this case.  Of particular concern is the fact that a class member's local phone provider is responsible for displaying a caller's CNAM on the caller ID device.  Both Plaintiff's evidence and Defendant's evidence disclose that the local phone provider is responsible for accessing a database to obtain current CNAM information.  There is no evidence in the record that Defendant Asset registered the name "Warranty Services" with any database.  Rather, the evidence indicates that Asset took all appropriate and available steps to update the CNAM for the 7962 number to display "AssetAcceptance," not the previous owner's "Warranty Services."  The key inquiry is whether the local phone provider for each class member accessed current CNAM data when providing caller ID services.  Individual class members would have different phone providers and establishing whether Asset knew that certain local phone providers displayed the wrong CNAM would require individual factfinding specific to each individual.

Even more troubling is Plaintiff's request to certify a class for actual damages.  Actual damages are available for FDCPA violations under 15 U.S.C. § 1692k, as well as statutory damages, costs and attorney fees.  The Plaintiff has provided no model for

calculating actual damages on a class-wide basis. The Supreme

Court's recent opinion in <u>Behrend</u> is clear that a plaintiff

seeking class certification must present evidence of a reliable

methodology for calculating damages on a class-wide basis. 133

S. Ct. at 1432-1435. Mere assurance that a methodology could be

applied was found insufficient and the Supreme Court denied class

certification because "individual damage calculations will

inevitably overwhelm questions common to the class." <u>Id.</u> at

1433.

Here, where actual damages are sought for each class member,

individual damage calculations will overwhelm questions common to

the class and therefore the predominance requirement is not

satisfied.

Since the Court has found that the predominance requirement

of Rule 23(b)(3) is not satisfied, the Court need not address

whether the superiority requirement is met.

### D. Summary

For the reasons discussed in Subsections A through C above,

Plaintiff's motion for class certification will be denied.


## IV. MOTION TO SEAL

The Plaintiff's unopposed motion to seal seeks to seal two

documents attached as Exhibits C and I to the Declaration of

Sergei Lemberg submitted in support of Plaintiff's motion for

class certification.  Exhibit C is the Master Services Agreement between Asset and Omega Services, LLC.  Exhibit I is Asset's account notes for a New Jersey consumer who is not a party to this action.  Both documents were disclosed pursuant to the Court's discovery confidentiality order [Docket Item 26] and were designated "confidential."  Defendant Asset does not oppose sealing these documents.

The Court finds that the requirements of L. Civ. R. 5.3(c) are satisfied.  L. Civ. R. 5.3(c) allows the Court to permit a party to seal, or otherwise restrict public access to, any materials or judicial proceedings upon request by formal motion made pursuant to L. Civ. R. 7.1.  In particular, L. Civ. R. 5.3(c)(2) requires that any motion to seal or otherwise restrict public access shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.

In this case, the nature of the exhibits sought to be sealed are a business agreement and Defendant Asset's account notes regarding a non-party consumer.  There are legitimate private interests at stake if these documents are disclosed.  Disclosure of the Master Services Agreement and Asset's private account

files could cause harm to Asset's competitive standing in the market place and would result in the release of private information pertaining to non-parties, namely Omega and the New Jersey consumer referenced in Asset's account notes. <u>See Publicker Industries, Inc. v. Cohen</u>, 733 F.2d 1059, 1074 (3d Cir. 1984)(recognizing that courts have traditionally protected sensitive financial information such as trade secrets from public disclosure); <u>In re Cendant Corp.</u>, 260 F.3d at 194 (emphasizing that public access to litigation documents should be denied when the use of such documents may become a "vehicle for improper purposes") and <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 487 n.19 (3d Cir. 1995)(recognizing that a protective order may be sought to protect a business entity from revealing names of clients or financial information that is relevant for discovery purposes but not of public import).

Defendant Asset and the related non-parties would be injured if these documents were not sealed. Competitors of Defendant Asset and Omega would have access to sensitive information that could be used against them in the marketplace. The non-party New Jersey consumer would have private details relating to his account and related debt exposed to the public which could cause private harm. Sealing these exhibits is the least restrictive means available. Because these documents as a whole contain sensitive information, redaction is not a viable alternative to

sealing.[1]

Therefore, Plaintiff's motion to seal Exhibits C and I of the Lemberg Declaration will be granted.

## V.    CONCLUSION

For the reasons discussed herein, the Plaintiff's motion for class certification will be denied.  The Plaintiff's motion to seal will be granted.  The accompanying orders will be entered.

**August 1, 2013**                         **s/ Jerome B. Simandle**
Date                                                JEROME B. SIMANDLE
                                                       Chief U.S. District Judge

---

[1] In addition to satisfying the requirements of L. Civ. R. 5.3, the Court notes that both parties agree that these documents are confidential and are subject to a discovery confidentiality order.